## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

NORTHERN NATURAL GAS CO.,          )
                                   )
                    Applicant,     )        **CIVIL ACTION**
                                   )
v.                                 )        No.  04-1374-MLB
                                   )
ZENITH DRILLING CORP.,             )
                                   )
                    Respondent.    )
_____)

## MEMORANDUM AND ORDER

This case comes before the court on respondent's motion to dismiss for lack of subject matter jurisdiction. (Doc. 32.) The motion has been fully briefed and is ripe for decision. (Docs. 33, 37, 38, 39.) Respondent's motion is GRANTED for reasons set forth herein.

## I.   MOTION TO DISMISS STANDARDS: F.R.C.P. 12(b)(1)

Federal courts are courts of limited jurisdiction, available to exercise their power only when specifically authorized to do so. See Sellens v. Telephone Credit Union, 189 F.R.D. 461, 465 (D. Kan. 1999). Pursuant to the Federal Rules of Civil Procedure, a party may move for dismissal based upon a court's "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The Tenth Circuit has noted that Rule 12(b)(1) motions may take on two forms, either a "facial" attack or a "factual" attack. See Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). A "facial" attack questions the sufficiency of the complaint whereas a "factual" challenge contests those facts upon which the subject matter rests. Bryce v. Episcopal Church in the Diocese of Colorado, 121 F. Supp. 2d 1327, 1334 (D. Colo. 2000).

Respondent implies that it is mounting a factual attack on the court's subject matter jurisdiction; however, the court finds nothing in respondent's argument that raises a factual issue regarding subject matter jurisdiction. (Doc. 33 at 4.) Instead, the question presented is purely a question of law - whether a private actor may seek enforcement of an order issued by the Federal Energy Regulatory Commission (FERC) pursuant to its authority under the Natural Gas Policy Act (NGPA), 15 U.S.C. §§ 3301-3432. Accordingly, the court presumes the accuracy of all facts alleged in the application for enforcement.[1] (Doc. 1.)

## II.  FACTS AND PROCEDURAL HISTORY

This case is just one step in a dispute that has been in litigation since at least the 1980s. Rather than recount the extensive details, the court will piece together synopses of the litigation's history that have been provided by the District of Columbia Circuit and FERC.

> Until 1993 the Natural Gas Policy Act (NGPA) established the maximum lawful price that a producer could charge its pipeline customers for natural gas; under § 110 of the Act, the producer could adjust that price upward in order to recover its payment of a state severance tax. The Federal Energy Regulatory Commission, on remand from our decision in <u>Colorado Interstate Gas Co. v. FERC</u>, 850 F.2d 769 (1988), held that <u>ad valorem</u> taxes levied by Wyoming and Colorado are, but the <u>ad valorem</u> tax levied by Kansas is

---

[1] This is most fortunate for applicant, because, contrary to this court's standing order, applicant frequently failed to provide any citations to the record or other evidence to support the factual assertions set forth in its brief. (Doc. 37 at 3-7.) The court will not comb the record in search of evidence to support a party's factual assertions, nor will it credit unsupported allegations. <u>See</u> <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 672 (10th Cir. 1998)

not, a severance tax within the meaning of § 110. The Commission then ordered producers to refund payments received from pipelines in recovery of the Kansas tax with respect to production occurring after the <u>Colorado Interstate</u> decision. The Commission directed the pipelines in turn to channel those refunds to their customers, but decided not to make the pipelines liable for any amounts not received from producers.

. . . .

From 1978 until 1993 producer prices for natural gas were subject to maximum lawful levels specified in the NGPA.   15 U.S.C. §§ 3311-19. Section 110 of the NGPA permitted a producer to charge an amount in excess of those ceilings to the extent necessary to recover its payment of "State severance taxes attributable to the production of such natural gas," 15 U.S.C. § 3320(a)(1).   For this purpose, a severance tax was defined as "any severance, production, or similar tax, fee, or other levy imposed on the production of natural gas" by a state or Indian tribe, 15 U.S.C. § 3320(c).

In <u>Sun Exploration and Production Co.</u>, 36 FERC ¶ 61,093 (1986), the Commission determined that the Kansas ad valorem tax qualified as a severance tax under § 110 because it was based upon production factors.   In <u>Colorado Interstate</u> we concluded that the Commission's analysis in <u>Sun Exploration</u> "fell short of reasoned decision-making," and we remanded the matter for a more "cogent theory of what makes a tax 'similar' to a production or severance tax under § 110."   850 F.2d at 770, 773.   Reflecting our indulgent standard of review for a question so bound up in administrative policy-making, we noted that while the court "cannot defer to a vacuum," we would defer to "any Commission interpretation of § 110 that is not precluded by the statutory language and traditional methods of statutory construction, and that is reasonable." <u>Id.</u> at 774.

We also offered the Commission some guidance.   A severance tax is a cost imposed upon producing, while a property tax is a cost imposed upon holding, a resource; the non-recoverability of a severance tax is a disincentive to produce, while the non-recovery of a property tax is not a disincentive and, to the extent that extraction reduces the value of the reserves to which the property tax is applied, might even be an

-3-

incentive to produce. Id. at 771.  On the other
hand, if in computing the value of a property for
the purpose of levying a property tax "a state
sought to capitalize the annual production (or
revenue) enjoyed by each producer by multiplying
it by a single fixed figure, the [property] tax
would plainly be similar enough to a production
tax to qualify under § 110." Id. at 772.

Upon remand, the Commission identified two
essential differences between a severance tax and
a property tax:

> First, a ⋯ severance tax is on the
> volume or value of the commodity
> removed, as assessed at the time of
> removal.  A property tax ⋯ is on the
> value of the gas remaining in the
> ground as well as on the value of
> wells and other production assets on
> the lease, at the time of the tax
> assessment.
> Second, ⋯ once the unit of gas is
> produced and the severance tax is
> applied to it, that unit of gas is
> never again subject to the severance
> tax.  On the other hand, a property
> tax ⋯ is applied to a unit of gas
> reserves each year-year after
> year-until that unit of gas finally is
> produced and removed from the property
> being valued.

Colorado Interstate Gas Co., 65 FERC ¶ 61,292 at
62,370-71 (1993) (emphases in original)
(hereinafter Colorado Interstate Remand Order),
reh'g denied, 67 FERC ¶ 61,209 (1994)
(hereinafter Colorado Interstate Rehearing
Order).  Applying these distinctions, the
Commission concluded that the Kansas tax did not
qualify as a severance tax for three principal
reasons: (1) it was based upon the value of the
gas property rather than upon its current
production; (2) the volume of production was
relevant principally for determining the present
value of the gas reserves; and (3) the reserves
were taxed year after year until removed from the
ground and sold. Id. at 62,371-72.

The Commission ordered producers to refund
the Kansas taxes they had collected since June
1988, the date of our Colorado Interstate
decision which, in the FERC's view, first put
producers on notice that the tax might not be
recoverable under § 110.  Id. at 62,373.  The
Commission also ordered pipelines to flow-through
the refunds to customers as lump sum payments,

-4-

> but the pipelines were not held responsible for guaranteeing payment if a producer failed to meet its refund obligation. <u>Id.</u> at 62,374.

<u>Pub. Serv. Co. of Colorado v. F.E.R.C.</u>, 91 F.3d 1478, 1480-82 (D.C. Cir. 1996).  Following remand from the D.C. Circuit, FERC summarized the subsequent proceedings as they pertained to applicant and its producers:

> 3. In 1998, after the Court of Appeals ruling, the Commission ordered producers to refund, for flow through to the pipelines's customers, those Kansas ad valorem tax reimbursements that were in excess of the maximum lawful price, with interest, for the period October 4, 1983, through June 28, 1988, to the pipelines. <u>Public Service Company of Colorado</u>, 80 FERC ¶ 61,264 (1997).
> 4. Northern Natural Gas Company ("Northern Natural") is a pipeline company that is owed refunds.
> 5. By order issued December 27, 2000, the Commission accepted a settlement ("2000 Settlement") that Northern Natural filed to resolve the Kansas ad valorem tax issue with most of its customers. <u>Northern Natural Gas Company</u>, 93 FERC ¶ 61,311 (2000).

<u>N. Natural Gas Co.</u>, 107 F.E.R.C. ¶ 63,004, 65,015-16 (2004).  The 2000 settlement provided that applicant was entitled to keep 50% of all amounts in excess of $3 million recovered from certain producers specified in the settlement.  (Doc. 38 exh. A at Z0177-78.) Respondent was one of the producers so specified.  <u>Id.</u> at Z0192.

There appears to be no dispute that respondent declined to participate in any of the proceedings before FERC or the D.C. Circuit. <u>See, e.g., id.</u> at 65,018; <u>N. Natural Gas Co.</u>, 103 FERC ¶ 61,152, 61,530 (2003).  Ultimately, a FERC administrative law judge issued an order directing respondent, among other parties, to refund to applicant <u>ad valorem</u> taxes in a specified amount.  <u>N. Natural Gas Co.</u>, 107 F.E.R.C. ¶ 63,004 at 65,018.  No exceptions were filed to this

-5-

order, and it became final on May 17, 2004.  <u>N. Natural Gas Co.</u>, 107 FERC ¶ 61,170, 61,679 (2004).  In the present case, applicant seeks to enforce this order.  Respondent objects on the grounds that applicant lacks standing to seek civil enforcement of this administrative order, and that the court lacks subject matter jurisdiction.

## III.  ANALYSIS

As an initial matter, applicant asserts that respondent's challenge to subject matter jurisdiction is untimely, and has therefore been waived. (Doc. 37 at 9.)  Subject matter jurisdiction is a threshold matter into which a court has an independent duty to inquire, even if the parties do not raise it.  <u>Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.</u>, 98 F.3d 1241, 1244 (10th Cir. 1996).  It can never be waived, and is never untimely, even if raised for the first time <u>sua sponte</u> by the Supreme Court.  <u>See</u> <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501 (1986).  Accordingly, the court will consider the merits of respondent's motion.

Applicant asserts that the court has subject matter jurisdiction under Local Rule 83.7 and 28 U.S.C. § 1331.  Local Rule 83.7 provides, in relevant part, that "[a]n application for enforcement of an order of an agency shall contain a concise statement of the proceedings in which the order was entered, the facts upon which jurisdiction and venue are based, and the relief prayed."  D. Kan. Rule 83.7(a)(2).

Article III § 1 of the United States Constitution says that "[t]he judicial Power of the United States, shall be vested in one supreme Court, <u>and in such inferior Courts as the Congress may from</u>

time to time ordain and establish." (Emphasis added.) The Supreme
Court has consistently stated, "It is a fundamental precept that
federal courts are courts of limited jurisdiction. The limits upon
federal jurisdiction, whether imposed by the Constitution or by
Congress, must be neither disregarded nor evaded." Owen Equip. &
Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 2403, 57
L. Ed. 2d 274 (1978). Congress' exclusive role in ordaining lower
federal courts and establishing their jurisdiction has been recognized
and recounted since the early days of the republic:

> "[T]he judicial power of the United States ... is
> (except in enumerated instances, applicable
> exclusively to this Court) dependent for its
> distribution and organization, and for the modes
> of its exercise, entirely upon the action of
> Congress, who possess the sole power of creating
> the tribunals (inferior to the Supreme Court) ...
> and of investing them with jurisdiction either
> limited, concurrent, or exclusive, and of
> withholding jurisdiction from them in the exact
> degrees and character which to Congress may seem
> proper for the public good." Cary v. Curtis, 3
> How. 236, 245, 11 L. Ed. 576.

Ankenbrandt v. Richards, 504 U.S. 689, 698, 112 S. Ct. 2206, 2212, 119
L. Ed. 2d 468 (1992). Both the Constitution and the Supreme Court's
cases interpreting the first section of Article III leave no doubt
that Congress alone has the authority to give this court subject
matter jurisdiction to hear a particular case.

Applicant's suggestion that a local rule of this court provides
an independent basis for subject matter jurisdiction strains
credulity. Local Rule 83.7 is merely a procedural rule directing the
manner in which certain actions related to administrative orders must
be handled. By its own terms, this rule rejects any notion that it
conveys subject matter jurisdiction to hear a particular case.

-7-

Instead, the rule states, "An application for enforcement of an order of an agency shall contain a concise statement of . . . the facts upon which jurisdiction" is based. D. Kan. Rule 83.7(a)(2). This statement makes clear that jurisdiction must be proved by the applicant, and is not being conveyed by the rule itself. If a federal district court could, through its own local rules, grant itself jurisdiction to hear cases, there would be no limit on federal judicial power. Such a result would be contrary to the entire notion that federal courts are courts of limited jurisdiction. Local Rule 83.7 does not give this court jurisdiction to entertain an application to enforce an agency order.

In the alternative, applicant argues that the court has general federal question jurisdiction under 28 U.S.C. § 1331 to enforce the order of a federal administrative agency. (Doc. 37 at 8, 11.) Pursuant to that statute, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

For a case to arise under federal law, a right or immunity created by federal law must be an essential element of the matters before the court. <u>Phillips Petroleum Co. v. Texaco, Inc.</u>, 415 U.S. 125, 127, 94 S. Ct. 1002, 1003-04, 39 L. Ed. 2d 209 (1974).

> "A case 'arises' under the laws of the United States if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of such laws which is determinative of the resulting judgment. <u>Shulthis v. McDougal</u>, 225 U.S. 561, 32 S. Ct. 704, 56 L. Ed. 1205 (1912). Thus, if the action is not expressly authorized by federal law, does not require the construction of a federal statute

-8-

> and/or regulation and is not required by some
> distinctive policy of a federal statute to be
> determined by application of federal legal
> principles, it does not arise under the laws of
> the United States for federal question
> jurisdiction. Lindy v. Lynn, 501 F.2d 1367 (3rd
> Cir. 1974)."

Madsen v. Prudential Fed. Sav. & Loan Ass'n, 635 F.2d 797, 801 (10th Cir. 1980) (quoting Mountain Fuel Supply Co. v. Johnson, 586 F.2d 1375, 1381 (10th Cir. 1978)).

Applicant points to no federal statute that "expressly authorize[s]" it to seek enforcement of the FERC order. Id. Indeed, applicant completely disavows the civil enforcement provisions of the NGPA as providing any basis for subject matter jurisdiction in this case. (Doc. 37 at 10-13) A review of those provisions shows that, absent some exceptions not relevant here, FERC itself is the only entity authorized to seek enforcement of a FERC order issued pursuant to the NGPA by filing a civil action in federal district court. 15 U.S.C. § 3414 (b)(1).[2]

Turning to the second avenue by which applicant may establish federal question jurisdiction, applicant categorically denies that the court would be required to render a construction of any federal statute or regulation. On the contrary, applicant asserts that this

---

[2] The relevant part of this statute provides as follows:
   [W]henever it appears to the Commission that any
   person is engaged . . . in any act or practice
   which constitutes . . . a violation of [the
   NGPA], or any . . . order thereunder, the
   Commission may bring an action in the District
   Court of the United States for the District of
   Columbia or any other appropriate district court
   of the United States to . . . enforce compliance
   with [the NGPA], or any . . . order thereunder.

15 U.S.C. § 3414(b)(1) (emphasis added).

"is not a private cause of action under the [NGPA] alleging a violation of the NGPA or requesting this Court to decide any issue under the NGPA. . . .   Northern is <u>not</u> requesting that this Court interpret the NGPA or decide any issue under the NGPA." (Doc. 37 at 1, 10 (emphasis in original); <u>see also id.</u> at 11.)

As to the third and final method of establishing federal question jurisdiction, applicant fails to identify any "distinctive policy of a federal statute" that requires the court to resolve this case "by application of federal legal principles." <u>Madsen</u>, 635 F.2d at 801. Instead, applicant presents this case as essentially a "no-brainer," in the sense that enforcement of a federal agency order must, by its very nature, be within the jurisdictional grant of 28 U.S.C. § 1331. (Doc. 37 at 12 (euphemism added).)[3]   However, as the preceding analysis shows, that is simply not the case.

Moreover, this conclusion is consistent with the sparse case law addressing similar questions.   For example, in <u>Prairie Band of Pottawatomie Tribe of Indians v. Puckkee</u>, 321 F.2d 767 (10th Cir. 1963), the Tenth Circuit was asked to interpret and enforce a judgment entered in favor of the plaintiffs by the Indian Claims Commission. <u>Id.</u> at 769.   In ruling on the case, the circuit court said:

> Federal jurisdiction of the claim cannot be sustained under 28 U.S.C. § 1331, on the bare allegation that it "* * * arises under the Constitution, laws or treaties of the United States."   For "a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect (of Federal law) upon the determination of which the result depends."   <u>Shulthis v.</u>

---

[3] In applicant's own words, "[J]urisdiction is evident."   (Doc. 37 at 12.)

McDougal, 225 U.S. 561, 569, 32 S. Ct. 704, 706, 56 L. Ed. 1205; Gully v. First National Bank, 299 U.S. 109, 57 S. Ct. 96, 81 L. Ed. 70; Viles v. Symes, 10 Cir., 129 F.2d 828; Martinez v. Southern Ute Tribe, 10 Cir., 249 F.2d 915; and Martinez v. Southern Ute Tribe, 10 Cir., 273 F.2d 731. . . .

The fact that a suit involves the construction and effect of a judgment of a Federal court or tribunal does not, for that reason, make it one arising under the Constitution or laws of the United States. See: Moore v. Central R. Co. of New Jersey, 2 Cir., 185 F.2d 369; and Metcalf v. Watertown, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543. The Commission's judgment undoubtedly has its origin in Federal law, in the sense that it was authorized and promulgated thereunder. But, the suit does not purport to involve the construction and effect of the Federal statute which authorized the judgment, or under which it was rendered.

Id. at 770 (emphasis added); see also Metcalf v. City of Watertown, 128 U.S. 586, 588, 9 S. Ct. 173, 173-74, 32 L. Ed. 543 (1888) (holding that there was no federal question jurisdiction to enforce a judgment rendered by another federal court). If the court lacks federal question jurisdiction to enforce the judgment of another federal court or tribunal, it should certainly come as no surprise that section 1331 does not grant authority to enforce the orders of an administrative agency.

Likewise, a review of the case law determining whether courts had subject matter jurisdiction to enforce agency orders shows a consistent reluctance to assert jurisdiction under 28 U.S.C. § 1331. Instead, courts generally look to the specific statutes under which the agency issued the contested orders. See, e.g., Pueschel v. United States, 297 F.3d 1371, 1377-78 (Fed. Cir. 2002) (looking to the Civil Service Reform Act of 1978 for jurisdiction when applicant sought enforcement of an order issued by the Merit Systems Protection Board);

Stevedoring Servs. of Am., Inc. v. Eggert, 953 F.2d 552, 554-55 (9th Cir. 1992)(looking to the Longshore Harbor Workers' Compensation Act where applicant sought to enforce an order of the Benefits Review Board); Robinson v. Pinderhughes, 810 F.2d 1270, 1273-74 (4th Cir. 1987) (looking to the Education of the Handicapped Act for authority to enforce an administrative order issued thereunder); M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc., 31 F. Supp. 2d 226, 233 (D.P.R. 1998) (looking to the Comprehensive Environmental Response, Compensation, and Liability Act for jurisdiction to enforce an order issued thereunder by the United States Environmental Protection Agency).  If those specific statutes fail to authorize the suit, or fail to authorize the applicant to bring the suit, courts have generally found subject matter jurisdiction lacking, and have not resorted to 28 U.S.C. § 1331.  See, e.g., Pueschel, 297 F.3d at 1377-78 (declining to find subject matter jurisdiction because the Merit Systems Protection Board had authority to enforce its own orders); Stevedoring Servs., 953 F.2d at 555 (reversing district court's finding of jurisdiction under 28 U.S.C. § 1331 where no jurisdiction could be found under the Civil Service Reform Act); Robinson, 810 F.2d at 1273-74 (finding no jurisdiction to enforce an agency order issued under the Education of the Handicapped Act); see also Ceres Gulf v. Cooper, 957 F.2d 1199, 1208 (5th Cir. 1992) ("§ 1331 jurisdiction is unavailable where, as here [in a case involving the Longshore and Harbor Workers' Compensation Act], Congress has created a specific, statutorily-defined scheme that clearly supplants the general jurisdictional statute"); Smith v. United Mine Workers of Am., 493 F.2d 1241, 1244 (10th Cir. 1974) (where international union

-12-

sought to enjoin merger of intermediate union organizations, court said, "We have held that there is no subject-matter jurisdiction under either [the Labor Management Relations Act of 1947] or [the Labor-Management Reporting and Disclosure Act]. It follows that there is no federal question which would sustain federal question jurisdiction under the mentioned sections.").

As already discussed, supra, the order sought to be enforced was issued by FERC pursuant to the NGPA. Applicant specifically rejects the notion that the NGPA's civil enforcement provisions (and, by implication, any portion of the NGPA) form the basis for this court's subject matter jurisdiction in the present case. (Doc. 37 at 10-13.) Neither can the court find any authority in the NGPA for allowing a private party to seek enforcement of a FERC order. Accordingly, the court concludes that it has no subject matter jurisdiction to hear this case.

That conclusion notwithstanding, this ruling does not render the FERC order meaningless. While the NGPA does not authorize applicant to enforce the order, it certainly authorizes FERC to seek enforcement of its order. 15 U.S.C. § 3414(b)(1). Thus, if FERC is bothered by respondent's refusal to comply with the order to repay ad valorem taxes to applicant, FERC is certainly free to seek enforcement by any of the means authorized in the NGPA, including bringing an action like the one applicant attempts here. However, under the NGPA, it is FERC's action to bring, not applicant's. The application for enforcement of the FERC order is accordingly DISMISSED.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged. The standards governing motions to reconsider are

well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this  15th   day of December 2005, at Wichita, Kansas.


                                    s/  Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE